UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRACIE L. O'CONNOR, | ) | CIVIL ACTION NO. 4:21-CV-1077 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1] | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

## I.    INTRODUCTION

Tracie L. O'Connor is an adult who resides in the Middle District of Pennsylvania. She seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the

---

[1] Kilolo Kijakazi is the Acting Commissioner of Social Security. She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly the Commissioner's final decision will be VACATED, and this case will be REMANDED for further proceedings.

II.     BACKGROUND & PROCEDURAL HISTORY

On January 31, 2018, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 23).  In this application, Plaintiff alleged she became disabled on October 28, 2016. *Id.* Plaintiff later amended her onset date to September 19, 2019. *Id.* Plaintiff was 50 years old on her amended onset date. (Admin. Tr. 36). She alleges that he is disabled due to the following conditions: fibromyalgia, COPD, depression, anxiety, sleep apnea, chronic pain, and thyroid issues. (Admin. Tr. 263). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, use her hands and get along with others. (Admin. Tr. 296). Plaintiff has at least a high school education. (Admin. Tr. 36). Before the onset of her impairments, Plaintiff worked as a housekeeper and home attendant. *Id*.

On July 17, 2018, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 23). On August 2, 2018, Plaintiff requested an administrative hearing. *Id*.

On February 4, 2020, Plaintiff, assisted by her counsel, appeared and testified by telephone during a hearing before Administrative Law Judge Michelle Wolfe (the "ALJ"). *Id*. On March 19, 2020, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 38).

On May 1, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 240). Plaintiff also submitted new evidence that was not available to the ALJ when the ALJ's decision was issued. (Admin. Tr. 43-44).

On April 22, 2021, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1). With respect to the additional evidence submitted, the Appeals Council noted that:

> You submitted two pages of additional medical evidence from Mark Cruciani, MD, dated February 12, 2020 (2 pages). The Administrative Law Judge decided your case through June 30, 2018. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before June 30, 2018.

(Admin. Tr. 2).

On June 18, 2021, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1, ¶¶ 14-15). As relief, Plaintiff requests that the Court reverse the final decision denying Plaintiff's application for benefits, or in the alternative remand this case to the Commissioner for a new hearing with directions to render a timely decision. (Doc. 1).

On October 20, 2021, the Commissioner filed an Answer. (Doc. 10). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 10, ¶ 10). Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 11).

Plaintiff's Brief (Doc. 14), the Commissioner's Brief (Doc. 18), and Plaintiff's Reply (Doc. 19) have been filed.  This matter is now ripe for decision.

III.    STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals.

A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also*

20 C.F.R. § 404.1505(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

---

[2] Throughout this Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on March 19, 2020.

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the

ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

Plaintiff raises the following issues in her statement of errors:

(1)   The ALJ erroneously dismissed Plaintiff's bilateral carpal tunnel syndrome without considering all the evidence.

(2)   The ALJ found the opinion of the consultative physician not persuasive for erroneous reasons.

(3)   The ALJ failed to consider the opinions of the treating physician for no reason.

(4)   The ALJ failed to present a hypothetical question containing all of Plaintiff's credibly established limitations to the Vocational Expert, whose testimony thus did not constitute substantial evidence supporting the decision.

(Doc. 14, p. 4). Plaintiff added a fifth "error" in her argument section by raising a separation of powers argument.

A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In her March 2020 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through June 30, 2018. (Admin. Tr. 25). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between September 19, 2017, (Plaintiff's alleged onset date) and June 30, 2018, (Plaintiff's date last insured) ("the relevant period"). (Admin. Tr. 25).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: fibromyalgia, chronic obstructive pulmonary disorder ("COPD"), osteoarthritis of the acromioclavicular (a shoulder joint) with tendonitis, status post greater saphenous ablation (left December 2016 and right February 2017) (a leg vein closure procedure secondary to varicose veins), generalized anxiety disorder, major depressive disorder, mood disorder, bipolar disorder, and post-traumatic stress disorder. *Id*. The ALJ also identified the following medically determinable non-severe impairments: hypothyroidism, osteopenia, vertigo, dermatitis, sleep apnea, and bilateral carpal tunnel syndrome. (Admin. Tr. 26).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

> She requires the option to transfer positions from sitting to standing, with each interval being up to 1 hour during the workday, but since she is not off task when transferring. The claimant is limited to frequent pushing and pulling with the upper extremities, frequent overhead reaching with the upper extremities, and frequent bilateral handling. She is further limited to occasional pushing and pulling with the lower extremities. The claimant is limited to frequent balancing, and occasional stooping, crouching, crawling, kneeling, and climbing, but never climbing on ladders, ropes, or scaffolds. She is limited to frequent exposure to temperature extremes of cold, wetness, humidity, vibrations, fumes, odors, dusts, gases, and poor ventilation, as well as hazards, including moving machinery and unprotected heights. She can do simple routine tasks, but no complex tasks. She is limited to frequent interactions with coworkers and supervisors, and occasional interaction with the public.

(Admin. Tr. 30).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 36). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could

engage in other work that existed in the national economy. (Admin. Tr. 36-37). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: inspector, DOT #529.687-114; bench assembler, DOT #706.684-042; and officer helper, DOT #239.567-010. (Admin. Tr. 37).

B.   WHETHER THE ALJ PROPERLY EVALUATED DR. STONE'S OPINION

Plaintiff was referred to Dr. Marielle Stone, M.D., by the Bureau of Disability Determination for an internal medicine examination. On June 22, 2018, Dr. Stone examined Plaintiff. (Admin. Tr. 486-489). In her report, Dr. Stone diagnosed Plaintiff with chronic pain, fibromyalgia, COPD, sleep apnea, depression, anxiety, and panic attacks. During the examination Plaintiff declined to walk on her heels or toes due to concerns about losing her balance, she was able to squat 50%, had a normal stance, used no assistive devices, needed no help changing for the exam or getting on and off the table, and was able to rise from a chair without difficulty. Plaintiff had tenderness to palpation along both shoulders and had ten positive trigger points. Her reflexes were normal, she had no sensory deficits, she had full strength in her upper and lower extremities and full strength and sensation in her hands.

Following the examination, Dr. Stone completed a check-box medical source statement. (Admin. Tr. 490-495). In that medical source statement, Dr. Stone assessed that Plaintiff could: occasionally lift up to twenty pounds; frequently carry up to ten pounds (even though she could only "occasionally" lift); sit up to eight hours per day, for up to four hours at a time without interruption; stand a total of three hours per eight-hour day, up to one hour at a time without interruption; walk one hour per eight-hour workday, for up to fifteen minutes at one time without interruption; continuously handle, finger, feel, and push or pull with her upper extremities; occasionally reach in any direction *except* overhead, stoop, balance, climb ramps, and climb stairs; never reach overhead, climb ladders of scaffolds, kneel, crouch, or crawl. *Id.* Dr. Stone also assessed that Plaintiff could tolerate occasional exposure to unprotected heights, moving mechanical parts, and operating a motor vehicle; and no exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, or extreme heat. *Id.*

Dr. Stone provided the following supporting explanation for the lifting and carrying limitations: "limited shoulder and hip ROM. Back/Hip Shoulder pain." (Admin. Tr. 490).

Dr. Stone provided no supporting explanation for the sitting, standing, and walking limitations. (Admin. Tr. 491).

Dr. Stone provided the following supporting explanation for the reaching limitations: "limited shoulder ROM B/L. Shoulder and arm pain B/L." (Admin. Tr 492).

Dr. Stone provided the following supporting explanation for the climbing, balancing, stooping, kneeling, crouching, and crawling limitations: "shoulder/knee pain/back pain/neck pain. Limited shoulder and hip ROM." (Admin. Tr. 493).

Dr. Stone also completed a range of motion assessment. In that assessment, Dr. Stone observed that Plaintiff had limitations in her range of motion in her shoulders using this diagram:

## SHOULDER:









(Admin. Tr. 496).

On July 3, 2018, a state agency physician, Kevin Hollick, D.O. reviewed the available records, including Dr. Stone's opinion, and issued a competing assessment. (Admin. Tr. 105-108). Dr. Hollick assessed that Plaintiff could: occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry up to 10 pounds; stand and/or walk up to six hours per eight-hour workday; sit up to six hours per eight-hour workday; and occasionally climb ladders, climb scaffolds. *Id.* Dr. Hollick assessed that Plaintiff could push/pull (with arms or legs), climb ramps, climb stairs, balance, stoop, kneel, crouch, and crawl without limitation. *Id.* Dr. Hollick did not, however, issue any statement regarding Plaintiff's ability to reach overhead and did not reference Dr. Stone's range of motion chart in his supporting explanation. *Id.*

The ALJ found Dr. Hollick's opinion "partially persuasive," and found that Dr. Stone's opinion was "not persuasive." In doing so, the ALJ explained:

> As it pertains to claimant's physical functioning, the undersigned considered the state agency physical assessment of Dr. Kevin Hollick, and found it partially persuasive (Exhibit C2A). Dr. Hollick opined claimant was limited to light work, with postural and environmental limitations. In regards to the lifting limitations, Dr. Hollick's assessment is consistent with, and supported by, the limited longitudinal record, which reflects physical examinations and diagnostic testing which are not particularly adverse. However, when considering claimant's testimony, and activities of daily living, the undersigned gave claimant every benefit of the doubt, and added additional reaching and push/pull limitations, as well as additional

postural and environmental limitations. For these reasons, the opinion of Dr. Hollick is partially persuasive.

The undersigned considered the opinion of Dr. Marielle Stone, and did not find it persuasive (Exhibit C4F). Dr. Stone opined that claimant is capable of lifting up to 20 pounds occasionally, and carrying 10 pounds frequently, and up to 20 pounds occasionally. She further indicated that claimant could sit for 8 hours a day, stand for 3 hours in 1-hour increments, and walk for 1 hour in 15-minute increments. Additionally, she indicated claimant could never reach overhead, and could occasionally reach in all other directions. Moreover, she placed postural and environmental limitations on claimant. Dr. Stone's opinion is not consistent with, nor supported by, the longitudinal record, or her own examination, which reflects negative straight leg raise testing bilaterally, no joint deformity, no sensory deficit, normal strength, no muscle atrophy, and intact bilateral grip strength. Further, her opinion is internally inconsistent in that she found that claimant could lift up to 20 pounds occasionally, but could carry up to 10 pounds frequently. Lastly, it appears as if Dr. Stone's assessments are based on claimant's subjective complaints, rather than the objective record. For these reasons, her opinion is not persuasive.

(Admin. Tr. 34-35).

The Commissioner's regulations define a medical opinion as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she has] one or more impairment-related limitations or restrictions in the following abilities:"

(i) [The] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

Page 16 of 25

(ii)     [The] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii)    [The] ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv)     [The] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). A "medical source" is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State of Federal Law, or an individual who is certified by a States as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law. 20 C.F.R. § 404.1502(d). If one medical source submits multiple medical opinions, and ALJ will articulate how he or she considered the medical opinions from that medical source in a single analysis. 20 C.F.R. § 404.1520c(b)(1).

An ALJ's consideration of competing medical opinions and prior administrative medical findings is guided by the following factors: the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability); the extent to which the medical source's opinion is consistent with the record as a whole

(consistency); length of the treatment relationship between the claimant and the medical source; the frequency of examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c).

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ will explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. The ALJ may, but is not required to, explain his or her consideration of the other factors unless there are two equally persuasive medical opinions about the same issue that are not exactly the same. 20 C.F.R. § 404.1520c(b)(3). Unlike prior regulations, under the current regulatory scheme, when considering medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).

The regulations also define statements on issues reserved to the Commissioner as:

(i)     Statements that you are not disabled, blind, able to work, or able to perform regular or continuing work;

Page 18 of 25

(ii)   Statements about whether or not you have a severe impairment(s);

(iii)  Statements about whether or not your impairment(s) meets the duration requirement (see § 404.1509);

(iv)   Statements about whether or not your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;

(v)    Statements about what your residual functional capacity is using our programic terms about the functional exertional levels in Part 404, Subpart P, Appendix 2, Rule 200.00 instead of descriptions about your functional abilities and limitations (see § 404.1545);

(vi)   Statements about whether or not your residual functional capacity prevents you from doing past relevant work (see 404.1560);

(vii)  Statements that you do or do not meet the requirements of a medical-vocational rule in Part 404, Subpart P, Appendix 2; and

(viii) Statements about whether or not your disability continues or ends when we conduct a continuing disability review (see 404.1594).

20 C.F.R. § 404.1520b(c)(3). The regulations also direct that this type of evidence is inherently neither valuable or persuasive, and that because this is the case, the ALJ need not provide any analysis about how that evidence was considered in the determination or decision, even under 20 C.F.R. § 404.1520c. 20 C.F.R. § 404.1520b(c).

Plaintiff argues that the ALJ rejected Dr. Stone's opinion for "erroneous reasons." Specifically, Plaintiff contends:

Page 19 of 25

As the regulations provide, "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. § 404.1520c(c)(3)(v); *see also Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993) (examining physician more persuasive than one who only reviews records). However, the ALJ found Dr. Stone's opinion "not persuasive" for erroneous reasons (R. 35). The ALJ claimed the opinion was not supported by or consistent with the record or Dr. Stone's own examination, but contrary to the ALJ's claim, Dr. Stone made multiple clinical findings as discussed above, and provided supporting explanations for the limitations she assessed (R. 490, 492-93). Dr. Stone thus provided objective medical evidence of her findings and supporting explanations for her opinion, a fact which the regulations emphasize as making a medical opinion persuasive. 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions... will be."). Thus, the factors of supportability and consistency, which are the two most important factors in assessing medical opinions, support finding Dr. Stone's opinion persuasive.

The ALJ also rejected Dr. Stone's opinion as "internally inconsistent in that she found that claimant could lift up to 20 pounds occasionally, but could carry up to 10 pounds frequently" (R. 35). However, Dr. Stone reasonably concluded that Plaintiff could lift more than she could carry, and there is nothing "internally inconsistent" about her opinion, contrary to the ALJ's reasoning. Similarly, the ALJ's claim that "it appears as if Dr. Stone's assessments are based on claimant's subjective complaints rather than the objective record" is unfounded (R. 35) (emphasis added). Dr. Stone made findings on examination and expressly based her opinion on those findings.

In short, the ALJ rejected Dr. Stone's opinion for erroneous reasons. An ALJ cannot reject evidence for "the wrong reason." *Mason*, 994 F.2d at 1066. Dr. Stone's assessment should have been found persuasive, and would have resulted in a finding of disability. Because the ALJ erred in rejecting it, her decision should be reversed.

(Doc. 14, pp. 15-17).

In response, the Commissioner argues that the ALJ reasonably evaluated Dr.

Stone's opinion. Specifically, the Commissioner contends:

> Plaintiff takes issue with the ALJ's evaluation of these opinions (Pl.'s
> Br. at 15-17). She asserts that Dr. Stone's findings were "expressly
> based on her opinion on those findings" (Tr. 16-17). This is merely a
> request to reweigh the evidence, contrary to the standard of review.
> *Chandler*, 667 F.3d at 359 (the Court is "not permitted to reweigh the
> evidence or impose their own factual determinations."). Moreover,
> Plaintiff's argument is conclusory – in fact, her brief contains no
> citations in support of her argument.
>
> Because substantial evidence supports the ALJ's evaluation of the prior
> administrative medical findings and medical opinions pursuant to the
> controlling regulations, this Court should affirm.

(Doc. 18, pp. 39-40).

I agree with Plaintiff's position that the ALJ's evaluation of Dr. Stone's

opinion—specifically the overhead reaching limitation—is not supported by

substantial evidence. In this case, the ALJ stated that he "gave [Plaintiff] every

benefit of the doubt" when he limited her occupations that require no more than

"frequent" (up to six hours per workday) overhead reaching. (Admin. Tr. 35). The

ALJ supported this conclusion by remaking that Plaintiff had "negative straight leg

raise testing bilaterally, no joint deformity, no sensory deficit, normal strength, no

muscle atrophy, and intact bilateral grip strength." (Admin. Tr. 35). None of this

evidence, however, addresses the limitation to Plaintiff's range of motion for overhead reaching observed by Dr. Stone and her treating sources.

As discussed above, Dr. Stone's examination report includes a completed range of motion chart documenting that Plaintiff's range of motion is limited to 80 degrees of forward elevation and 75 degrees of abduction. A person limited to 80 degrees of forward elevation and 75 degrees of abduction would not likely be able to lift their arms over their head. Similarly, in March 2018 treating source Kenny Williams, D.O. observed that:

> There is tenderness over the distal rotator cuff tendons of both shoulders, right greater than left, with positive impingement signs including Hawkins, Neer's and resisted empty can testing. Rotator cuff strength appears to be full but the patient experiences pain when performing both abduction and resisted external rotation. **Range of motion of the shoulders is about 75% of normal** in both internal and external rotation. There is otherwise normal tone, stability, functional range of motion and no significant tenderness of the limbs.

(Admin. Tr. 464) (emphasis added).

In *Cotter v. Harris*, the Third Circuit recognized that there is "a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record." 642 F.2d 700, 706 (3d Cir. 1981). In defining the parameters of this obligation, the Circuit explained:

> [i]n our view and examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual

Page 22 of 25

conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence.

*Id.* at 705 (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). In its opinion denying a rehearing in *Cotter*, the Circuit further elaborated that "in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481 (3d Cir. 1981).

The range of motion evidence is highly relevant to the determination of whether Plaintiff can reach overhead. Nothing in the ALJ's decision suggests this evidence was considered, and even if it was considered no supporting explanation was provided as to why it was disregarded. Furthermore, as Plaintiff noted in her brief, each occupation identified by the VE in response to the ALJ's controlling hypothetical question requires frequent reaching. DOT #529.687-114, 1991 WL 674763 (occupation of Inspector requires "frequent" reaching); DOT #706.684-042, 1991 WL 679055 (occupation of Bench Assembler requires "frequent" reaching); DOT #239.567-010, 1991 WL 672232 (occupation of Office Helper requires "frequent" reaching"). The Dictionary of Occupational Titles does not differentiate between reaching overhead and reaching in other directions.

Because evidence related to Plaintiff's complete inability to reach overhead was disregarded without explanation, I find that the ALJ's rationale for discounting

Page 23 of 25

Dr. Stone's opinion, and by extension the RFC assessment in this case, are not supported by substantial evidence. Accordingly, I am compelled to remand this case to the Commissioner for further proceedings.

C.   PLAINTIFF'S REMAINING ARGUMENTS

Plaintiff raises the following additional arguments in her Brief:

(1)   The ALJ erroneously dismissed Plaintiff's bilateral carpal tunnel syndrome without considering all the evidence.

(2)   The ALJ failed to consider the opinions of the treating physician for no reason.

(3)   The ALJ failed to present a hypothetical question containing all of Plaintiff's credibly established limitations to the Vocational Expert, whose testimony thus did not constitute substantial evidence supporting the decision.

(4)   Whether Plaintiff is entitled to remand because Andrew Saul's appointment violates separation of powers.

Because I have found a clear basis for remand due to ALJ's failure to properly explain or support her decision to discount Dr. Stone's opinion, I need not address these remaining arguments. To the extent any further error exists, it may be addressed on remand.


[The next page contains the Conclusion]

V.    CONCLUSION

Accordingly, I find that that Plaintiff's request for remand be GRANTED as

follows:

(1)    The final decision of the Commissioner will be VACATED.

(2)    This case will be REMANDED to the Commissioner for further
consideration pursuant to sentence four of 42 U.S.C. § 405(g).

(3)    Final judgment will be issued in favor of Tracie L. O'Connor.

(4)    An Appropriate Order will be issued.


Date: September 19, 2022                 BY THE COURT

                                         _s/William I. Arbuckle_
                                         William I. Arbuckle
                                         U.S. Magistrate Judge